UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00163-RJC
(3:15-cr-00121-RJC-DSC-29)

| | |
|---|---|
| JORGE SOSA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.    BACKGROUND**

Petitioner Jorge Sosa ("Petitioner") is a member of the street gang La Mara Salvatrucha, or MS-13. United States v. Zelaya, 908 F.3d 920, 924 (4th Cir. 2018). MS-13, formed in the 1980s by Salvadoran immigrants to Los Angeles for protection against rival street gangs, "has grown into a violent organization with active 'cliques,' or local chapters with varying levels of autonomy, operating throughout the United States and several Central American countries." Id. at 924. "MS-13 cliques may extort local businesses or drug dealers, participate in international narcotics trafficking, and remit funds to gang leadership in El Salvador." Id.   Petitioner was a

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00163-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:15-cr-00121-RJC-DSC-29.

member of an MS-13 clique in or around Charlotte, North Carolina, called Charlotte Locotes. Id. He participated in gang fights as a member of MS-13. Id.

On the evening of June 30, 2013, Petitioner and his cousin Tomas Maradiaga were involved in the shooting of two non-gang members over an unpaid tab for drinks. The details of the shooting are discussed in detail below. The State of North Carolina filed charges against Petitioner relating to the June 30th shooting. In April 2014, Petitioner was convicted of assault with a deadly weapon with intent to kill inflicting serious injury and discharging a weapon into a moving vehicle by the state. He was sentenced to 55 to 78 months' imprisonment. [CR Doc. 1044 at ¶ 133: PSR]. A second charge of assault with a deadly weapon with intent to kill inflicting serious injury was dismissed. [Id.].

A year later a federal grand jury indicted Petitioner and three dozen other MS-13 members. [CR Doc. 3: Bill of Indictment]. Petitioner was charged with one count of RICO (Racketeer Influenced Corrupt Organization) conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); one count of aiding and abetting attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) and 2 (violent crime in aid of racketeering (VICAR)) (Count Ten); and one count of using, brandishing, and discharging of a firearm during and in relation to a crime of violence, that is, the attempted murder in aid of racketeering charged in Count Ten, in violation of 18 U.S.C. § 924(c) and 2 (Count Eleven). [Id. at 3-32, 41-42]. Count Ten charged specifically as follows:

> 42. On or about June 30, 2013, in Mecklenburg County, Western District of North Carolina, and elsewhere, [Petitioner] aided and abetted by others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, unlawfully and knowingly attempted to murder individuals known to the Grand Jury, Victims No. 4 and No. 5, with a dangerous weapon, that being a firearm, in violation of North Carolina law, N.C. Gen. Stat. §§ 14-17 and 14-2.5.

2

All in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

[Id. at 41]. Count Eleven alleged, in pertinent part, as follows:

44. On or about June 30, 2013, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, [Petitioner] aided and abetted by others known and unknown to the Grand Jury, during and in relation to a crime of violence, **that being Attempted Murder in Aid of Racketeering, a violation of Title 18, United States Code, Section 1959, which is set forth in Count Ten of this Indictment**, for which he may be prosecuted in a court of the United States, did knowingly and unlawfully use and carry one or more firearms, and in furtherance of such crime of violence, did possess one or more firearms.

It is further alleged that said firearm was brandished in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

It is further alleged that said firearm was discharged in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

All in violation of Title 18, United States Code, Sections 924(c) and 2.

[Id. at 42 (emphasis added)]. Petitioner filed for a bill of particulars. [CR Doc. 745 at 3]. This Court denied the motion, holding that the Indictment provided sufficient information regarding the nature of the charges against Petitioner. [CR Doc. 763]. Petitioner also moved for a separate trial and filed several motions in limine seeking to exclude evidence at trial. [CR Docs. 746, 778-81]. The Court denied his motion for a separate trial. [CR Doc. 808].

Together with only three of thirty-six co-defendants, Petitioner proceeded to a jury trial on all three counts after pleading not guilty. Zelaya, 908 F.3d at 925. The Government presented extensive testimony from law enforcement officers, as well as co-conspirators and other witnesses. As to Petitioner, the following evidence was elicited at trial. On the night of the shooting, Petitioner drove Maradiaga to a disco to dance. [CR Doc. 946 at 231: Trial Tr.]. Petitioner spoke with someone from another group of people that showed up at the disco. [Id. at 231-32]. Petitioner

3

told Maradiaga that they were going to fight because "the other guys were Surenos," a rival gang to MS-13. [Id. at 232]. Petitioner and Maradiaga left and went to another house to drink. [Id. at 233]. As they were leaving, another male customer did not want to pay for his drinks. [Id. at 234]. Petitioner started arguing with this man, who then pushed Petitioner. [Id.]. They went outside where the man brandished a stick at Petitioner. [Id. at 235]. Petitioner got upset and said they were going to fight, but that he wanted to get something. Petitioner and Maradiaga left. [Id.]. Maradiaga got into the back of the car and fell asleep, waking when Petitioner was driving back to the house where they had been drinking. When Maradiaga woke up, there was a towel with a long weapon under it on the floor of the car. [Id. at 236]. As they approached the man they had the dispute with earlier, Petitioner told Maradiaga to grab the gun and shoot it. [Id. at 736-39]. The man and his male companion got into a car and tried to drive away. [Id. at 237-40]. Petitioner and Maradiaga caught up to their car and Maradiaga fired two shots at them. [Id. at 240]. Petitioner told Maradiaga to shoot again, but when Maradiaga did not, Petitioner grabbed the gun and fired seven or eight shots at the men in their car. [Id. at 241]. Petitioner and Maradiaga then drove away. [Id. at 245]. Petitioner dropped off Maradiaga and called him later to tell him that the men they had shot at did not die and that Maradiaga should leave town. [Id.]. The next day, Chelito called Maradiaga and told him that Petitioner had turned himself in and was blaming Maradiaga for the incident. [Id. at 245-46]. Chelito told Maradiaga that he should leave. [Id. at 246]. Rather than leaving, Maradiaga turned himself in. [Id. at 247-48]. Maradiaga testified that he pleaded guilty to assault with a deadly weapon inflicting serious injury and discharging a weapon into an occupied vehicle in state court and that he was sentenced to four to five years in prison for his involvement in the shooting. [Id. at 224, 249-50].

On cross-examination of Maradiaga, Petitioner's attorney elicited testimony that Maradiaga was in the back seat of the car when Maradiaga shot at the men, that the car had a manual transmission, and that Petitioner was driving. [CR Doc. 946 at 259-60]. Maradiaga also testified that he did not see anyone flash gang signs during the confrontation. [Id. at 260-61]. To challenge Maradiaga's credibility, counsel questioned Maradiaga extensively regarding the various statements he made to law enforcement officers. [Id. at 249-61].

Petitioner moved for judgment of acquittal. He argued that there was insufficient evidence to establish that Petitioner had committed a crime of violence "to maintain or increase his position in the enterprise" or that the crime was "in any way, shape, or form, connected to MS-13." [CR Doc. 947 at 123-28]. Counsel argued that the general testimony regarding MS-13 membership did not establish that all crimes committed by an MS-13 member were gang-related. [Id. at 128]. While this Court agreed with that proposition, it held that there was sufficient evidence to infer motivation and that the crime was caused, in part, by Petitioner's desire to maintain or increase his position in the gang. [Id. at 128-29]. Petitioner renewed his motion at the close of all evidence, arguing that the "purpose" element could not be satisfied by a general connection. [CR Doc. 948 at 26-30]. The Court denied the motion. [Id. at 30].

During closing arguments, Petitioner argued that the Government had not established his connection to MS-13. [Id. at 162-69]. He argued there was no evidence of general purpose "to maintain or increase his position in the organization" in committing the VICAR and § 924(c) offenses. [Id. at 169, 173-76]. Petitioner also argued that his admission to the state charges did not establish attempted murder. [Id. at 170, 172]. Petitioner claimed it was "common sense that he did not take a rifle from someone in the back seat while he was driving a manual

5

transmission and begin firing the gun out the window. [Id. at 171]. He also argued that he had no intent to kill because he told Maradiaga, "We're just gonna scare him." [Id. at 172-73].

The Court granted Petitioner's request for a jury instruction on Count Ten stating that the objective of maintaining or increasing position in the enterprise must have been "a substantial purpose" behind commission of the violent crime or that "the defendant committed the crime as an integral aspect of membership in the enterprise." [CR Doc. 948 at 14-17, 30-31, 226-27, 232-35]. The jury convicted Petitioner on all counts. [CR Doc. 826: Jury Verdict].

Petitioner was sentenced to a term of imprisonment of 207 months on Count One; a term of imprisonment of 120 months on Count Ten, to run concurrently with the term imposed on Count One; and a term of imprisonment of 120 months on Count Eleven, to run consecutively to any other term of imprisonment, for a total term of imprisonment of 327 months. [CR Doc. 1104 at 2: Judgment]. Judgment on Petitioner's conviction was entered on December 27, 2016. [Id.].

Petitioner appealed. [CR Doc. 1108]. On appeal, Petitioner challenged the denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, certain jury instructions, the District Court's denial of Petitioner's motion to sever the trials, and the denial of his motion for a new trial. Zelaya, 908 F.3d at 925. As to the Rule 29 motion, Petitioner argued there was insufficient evidence as a matter of law to support his VICAR conviction on Count Ten, and, therefore, his § 924(c) conviction predicated on the VICAR offense on Count Eleven. Id. at 926-28.

To establish a VICAR offense, the Government must prove beyond a reasonable doubt: "(1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general

6

purpose in so doing was to maintain or increase his position in the enterprise." United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994) (citation omitted).

Petitioner specifically challenged that sufficiency of the evidence on the "general purpose" element of a VICAR offense. Id. at 926-27 (citing Fiel, 35 F.3d at 1003). The Fourth Circuit found that there was sufficient evidence to support Petitioner's VICAR conviction, citing "the combination of the shooting's nature as grossly disproportionate retaliation to a public slight and [Petitioner's] after-the-fact engagement of a fellow MS-13 member to help him manage the consequences of the crime" as "sufficient to permit the jury to infer a gang-related motive." Id. at 928. The Court further held that Petitioner's challenge to his § 924(c) conviction also failed because it was based solely on insufficient evidence on the VICAR conviction. See id. at 927-28. In finding Petitioner's other grounds for appeal similarly unavailing, the Fourth Circuit affirmed Petitioner's convictions. Id. at 928-31. The Supreme Court denied Petitioner's pro se petition for writ of certiorari. Sosa v. United States, 139 S.Ct. 1581 (2019).

On March 17, 2020, Petitioner filed the instant § 2255 motion, asserting four claims of ineffective assistance of trial counsel. [CV Doc. 1]. Petitioner claims he received ineffective assistance of counsel because (1) his attorney failed to argue that the predicate crime of violence for Count Eleven was Count One, RICO conspiracy, which is not a crime of violence for § 924(c) purposes; (2) his attorney failed to challenge the sufficiency of Count Ten of the Indictment; (3) his attorney failed to address that a violent crime committed by a gang member is not automatically gang-related for VICAR purposes; and (4) his attorney failed to assert a claim of vindictive prosecution. [Id. at 4-5, 7-8]. For relief, Petitioner asks for an evidentiary hearing "to determine the accuracy of the government's case," for the Court to vacate his conviction and sentence, and for any other appropriate relief. [Id. at 25]. On initial review, the Court ordered the Government

7

Case 3:20-cv-00163-RJC   Document 5   Filed 03/26/21   Page 7 of 13

to respond to Petitioner's motion. [CV Doc. 2]. The Government responded and Petitioner replied. [CV Docs. 3, 4].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet

this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Count One as the § 924(c) Predicate

Petitioner contends that his attorney was ineffective for failing to argue that the predicate crime of violence for his § 924(c) was unclear and, therefore, should have been presumed to be RICO conspiracy alleged in Count One.

An attorney's failure to raise a meritless issue is not ineffective assistance. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999); United States v. Anthony, 149 Fed. App'x 135, 136 (4th Cir. 2005) (rejecting claim "that counsel rendered ineffective assistance for failing to assert a meritless objection in district court"). The Indictment clearly states that the predicate crime of violence for Petitioner's § 924(c) offense was the VICAR attempted murder charge alleged in Count Ten. [CR Doc. 3 at 42]. As such, Petitioner's claim of ineffective assistance on this ground is meritless. Counsel was not deficient for failing to raise this objection and Petitioner cannot show prejudice.[2] See Strickland, 466 U.S. at 687-88, 694; Anthony, 149 Fed. App'x at 136.

---

[2] The Court notes that, to the extent Petitioner attempts to raise a direct challenge to his § 924(c) conviction, such a challenge is procedurally barred and without merit. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Frady, 456 U.S. 152, 167 (1982). Further, Petitioner has not shown cause, prejudice, or actual innocence to overcome the procedural bar. See United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Moreover, attempted murder in aid of racketeering would be considered a crime of violence under § 924(c) in any event. See United States v. Mathis, 932 F.3d 242, 264-65 (4th Cir. 2019) (holding VICAR murder was a crime of violence under § 924(c)); United States v. Villegas, 777 Fed. App'x 660, 660-61 (4th Cir. 2019) (affirming § 924(c) convictions predicated on attempted murder in aid of racketeering), petition for writ of cert. denied, Cruz v. United States, 141 S.Ct. 91 (2020).

## B. Sufficiency of Evidence for VICAR Conviction[3]

Petitioner claims that he received ineffective assistance of counsel because his attorney failed to challenge the sufficiency of the evidence supporting his commission of attempted murder in aid of racketeering. Petitioner also challenges his counsel's alleged failure to develop or present evidence intended to undermine proof of the VICAR elements. Specifically, Petitioner asserts that counsel "failed to independently investigate specific information that was given to him" to undermine the Government's theory; "failed to clarify the irrelevancy between the violent aspect of [Petitioner's] crime and relation to the MS-13 gang;" failed to challenge Maradiaga's credibility; and failed to show that Maradiaga's phone did not show evidence of a call from Chelito the day after the shooting. [CV Doc. 1-1 at 12-13, 17-18]. This claim is plainly unsupported by the record.

Petitioner's counsel moved to dismiss the VICAR charge, arguing that there was insufficient evidence to support it. He claimed that the evidence did not show that Petitioner had committed a crime of violence "to maintain or increase his position in the enterprise" or that the time was "in any way, shape, or form, connected to MS-13." [CR Doc. 947 at 123-28]. Counsel also argued that the general testimony regarding MS-13 membership did not establish that all crimes committed by an MS-13 member were gang-related. [Id. at 128]. Furthermore, counsel challenged Maradiaga's credibility at trial, questioning him extensively about the different statements he had given to law enforcement. [See CR Doc. 946 at 249-60]. Counsel also objected to Maradiaga's testimony as to what Chelito told him. The Court, however, overruled this objection. [Id. at 246]. In short, the record plainly shows that Petitioner's counsel focused

---

[3] On his second ground for relief, Petitioner claims that his attorney was ineffective for failing to argue that Count Ten of the Indictment was insufficient. In substance, however, Petitioner argues that the evidence was insufficient to support a conviction on the VICAR count, which is redundant of his third claim of ineffective assistance. The Court, therefore, addresses them together.

10

sufficient efforts on establishing that the shooting was not gang related and, therefore, that the VICAR elements were not satisfied. As highlighted by the Fourth Circuit, Petitioner's grossly disproportionate response to the conflict over whether a man paid for his drinks "suggest a motive of making a statement" consistent with an MS-13 member acting to maintain his position. See Zelaya, 908 F.3d at 928. Petitioner has, therefore, failed to demonstrate deficient performance. See Strickland, 466 U.S. at 687-88, 694; Anthony, 149 Fed. App'x at 136. Moreover, the Fourth Circuit's rejection of Petitioner's sufficiency challenge on appeal also negates any prejudice argument in any event. See Zelaya, 908 F.3d at 927-28. The Court will dismiss this claim.

### C. Vindictive Prosecution Claim

Petitioner claims his attorney was ineffective for failing to lodge a claim of vindictive prosecution. While Petitioner concedes that there are no double jeopardy concerns at play, he claims he was "punished two times for the same conduct, conviction in the state and conviction in the federal court … based on his gang affiliation." [Doc. 1-1 at 21-22]. "A criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights." United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997). "[A]bsent a substantial showing to the contrary, governmental actions such as the decision to prosecute are presumed to be motivated solely by proper considerations." Id. To show prosecutorial vindictiveness, a defendant must establish through objective evidence that "(1) the prosecutor acted with genuine animus through objective evidence and (2) the defendant would not have been prosecuted but for that animus." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001). See United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485 (1982) (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion").

Here, Petitioner bases his claim on the fact that Maradiaga was not charged in the federal indictment. Petitioner further argues that the evidence regarding MS-13 "contaminate[d] the jury's perception." [CV Doc. 1-1 at 21, 23]. Petitioner asserts, therefore, that his attorney should have challenged Petitioner's federal charges as vindictive prosecution. [Id. at 21-22]. This claim is, as the others, meritless.

Petitioner was one of 37 defendants charged with racketeering activities relating to their MS-13 membership. The Indictment alleged that "members of MS-13 engaged in criminal activity including drug distribution, murders, assaults, firearms possession, robberies, and obstructing justice" through witness intimidation. [CR Doc. 3 at 7]. Petitioner was charged with racketeering conspiracy, attempted murder in aid of racketeering, and using a firearm in relation to a crime of violence. He points to no evidence – and there is no evidence – that he was singled out for prosecution or that there was any specific animus against him. That Maradiaga was not charged in the federal indictment is inconsequential. The Indictment was solely directed at racketeering activities and Maradiaga was not a member of MS-13 nor involved in its activities. [See Doc. 1 at 7]. As such, Petitioner was not similarly situated to Maradiaga. Petitioner has not alleged nor shown the elements of a vindictive prosecution claim. His claim of ineffective assistance for his attorney's failure to raise this meritless issue, therefore, fails and will be dismissed.

As such, because Petitioner has not shown deficient performance or prejudice, his claims of ineffective assistance of counsel will be denied. See Strickland, 466 U.S. at 687-88, 694.

IV. **CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

12

Case 3:20-cv-00163-RJC   Document 5   Filed 03/26/21   Page 12 of 13

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: March 26, 2021

Robert J. Conrad, Jr.
United States District Judge